RECEIVED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

AUG 2 2 2017

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA,               )
                                        )    Case No. 3:17-cr-77
              v.                        )    3:17-cr-78
                                        )    PLEA AGREEMENT
PAUL MATTHEW BOLGER,                    )
                                        )
              Defendant.                )

The United States of America (also referred to as "the Government") and the Defendant,

PAUL MICHAEL BOLGER, and Defendant's attorney, enter into this Plea Agreement.

**A.    CHARGES**

1.     Subject Offenses.  Defendant will (a) waive Indictment in open court (and by

executing a separate waiver of Indictment form) and plead guilty to Counts 1-23 of the filed

Information (the "Iowa Information") in the Southern District of Iowa that charges False

Statements Relating to Health Care Matters, in violation of Title 18, United States Code, Section

1035(a)(2) (Counts 1-18), and Misbranding, in violation of Title 21, United States Code, Sections

331(k), 353(b)(1) and 333(a)(1) (Counts 19-23); and (b) consent to transfer an action to be filed in

the Central District of California to the Southern District of Iowa, under Fed.R.Crim.P. 20, for full

disposition, and waive Indictment in open court (and by executing a separate waiver of Indictment

form) and plead guilty to a single count Information in respect of the action to be filed in the

Central District of California, in the form attached hereto or in a substantially similar form, that

charges False Statements Relating to Health Care Fraud Matters, in violation of Title 18, United

States Code, Section 1035(a)(2) (the "California Information").

2.     No Charges to be Dismissed.  There are no charges to be dismissed.

1

3.    No Further Prosecution.    The Government agrees that Defendant will not be charged in the Southern District of Iowa or in the Central District of California with any other federal criminal offense arising from or directly relating to this investigation. This paragraph and this Plea Agreement do not apply to (1) any criminal act occurring after the date of this agreement, or (2) any crime of violence.

## B.    MAXIMUM PENALTIES

4.    Maximum Punishment.    Defendant understands that each of the counts that charges a violation of Title 18, United States Code, Section 1035(a)(2), Counts 1-18 of the Iowa Information and the single count of the California Information, carries a term of not more than five (5) years in prison; a maximum fine of $250,000; and a term of supervised release not more than three (3) years. A mandatory special assessment of $100 per count also must be imposed by the sentencing court. Defendant further understands that each of the counts that charges a violation of 21 U.S.C. §§ 331(k), 353(b)(1), and 333(a)(1), Counts 19-23 of the Iowa Information, carries a sentence of not more than one (1) year in prison; a maximum fine of $ 100,000 and a term of supervised release of not more than one (1) year. A mandatory special assessment of $25 per count also must be imposed by the sentencing court. The district court may, in its discretion, run the sentences for all Counts consecutive.

5.    Supervised Release--Explained.    Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions. If Defendant were to violate a condition of supervised release, Defendant could be sentenced not more than two (2) years in prison, without any credit for time previously served.

2

6.    <u>Detention</u>.    Provided that Defendant does not violate any conditions of Defendant's pretrial release, and does not appear to be mentally at risk to harm himself or any other person, the Government agrees to recommend that Defendant may remain on pretrial release pending imposition of sentence and will recommend that Defendant be permitted to self-report to serve any term of imprisonment imposed by the Court.

## C.    NATURE OF THE OFFENSES -- FACTUAL BASIS

7.    <u>Elements Understood</u>.    Defendant understands that to prove the offenses alleged in Counts 1-18 of the Iowa Information and the single count of the California Information, **False Statements Relating to Health Care Matters**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a)    The defendant made a materially false, fictitious, or fraudulent statement or representation and/or made or used any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

(b)    In connection with the delivery of or payment for health care benefits, items, or services involving a health care benefit program; and

(c)    The defendant did so knowingly and willfully.

Defendant further understands that to prove the offenses alleged in **Counts 19-23** of the Iowa Information, **Misbranding**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a) The defendant introduced and delivered for introduction into interstate commerce and caused to be introduced and delivered into commerce a prescription drug;

(b) Prescription drugs were transported in interstate commerce; and

(c) The defendant would misbrand or cause the misbranding of a drug while such drug is held for sale. Specifically, the prescription drug was dispensed without a valid prescription of a practitioner licensed by law to administer such drug.

3

8.    Factual Stipulations.    Attached hereto as Attachment "A" and incorporated by reference herein, are factual stipulations entered into between the parties, including the factual stipulations of Defendant's offense conduct relating to each subject offense. Defendant acknowledges that these statements are true.    Defendant further agrees that these factual statements may be used by any party, including the United States, in any other proceeding, unless the Court should permit the Defendant to withdraw from this Plea Agreement prior to sentencing. Defendant acknowledges and agrees that the statement of facts in Attachment "A" is set forth for the purpose of establishing a factual basis to support defendant's guilty pleas as required pursuant to Federal Rule of Criminal Procedure 11, and is not in any way meant to be anywhere near a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

9.    Truthfulness of Factual Basis.    Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offenses to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

10.    Venue.    Defendant agrees that venue for the offenses charged in the Iowa Information is proper for the United States District Court for the Southern District of Iowa and that venue for the offense charged in the California Information is proper for the United States District Court for the Central District of California.

**D.    SENTENCING**

11.    Sentencing Guidelines.    Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines,

4

together with other factors set forth by law. The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

(a)    The nature of the offenses to which Defendant is pleading guilty;

(b)    Whether the offense involved fraud;

(c)    The amount of the total loss;

(d)    Whether the crime involved a federal health care offense involving a Government health care program

(e)    Whether Defendant attempted to obstruct justice in the investigation or prosecution of the offense;

(f)    The nature and extent of Defendant's criminal history (prior convictions); and

(g)    Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction. Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

12.    Acceptance of Responsibility.    The Government agrees to recommend that Defendant receive credit for acceptance of responsibility under USSG §3E1.1. The Government reserves the right to oppose a reduction under §3E1.1 if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise engages in conduct not consistent with acceptance of responsibility. If the base offense level is 16 or above, as determined by the Court, the Government agrees that Defendant should receive a 3-level reduction, based on timely

notification to the Government of Defendant's intent to plead guilty.

13.     <u>Presentence Report</u>.    Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report. The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

14.     <u>Evidence at Sentencing</u>.    The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement. Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

15.     <u>Sentence to be Decided by Judge -- No Promises</u>.    This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.   Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties.   Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding.   Therefore, it is uncertain at this time what each Defendant's actual sentence will be.

16.     <u>No Right to Withdraw Plea</u>.    Defendant understands that Defendant will have no right to withdraw Defendant's pleas if the sentence imposed, or the application of the Sentencing

6

Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

**E.    FINES, COSTS, AND RESTITUTION**

17.    <u>Fines and Costs</u>.  Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

18.    <u>Special Assessment</u>.  Defendant agrees to pay the mandatory special assessment of $2,025.00          at or before the time of sentencing, as required by 18 U.S.C. § 3013.

19.    <u>Restitution</u>.  Defendant agrees that the Court should impose an order of restitution to Tricare at DHA/ U.S. Treasury, Attn: Accounting Officer, 16401 E. Centretech Pkwy, Aurora, CO  80011, in the amount of at least $10,000.00 with the final amount to be determined by the court at sentencing; that such order of restitution shall be due and payable immediately; and that if Defendant is not able to make full payment immediately, Defendant shall cooperate with the United States Probation Office in establishing an appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in making the required payments.  Any such payment plan does not preclude the Government from utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the Treasury offset program.

20.    <u>Financial Statement</u>.  Defendant agrees to complete truthfully and in full a financial statement provided by the U.S. Attorney's Office, and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

**F.    LIMITED SCOPE OF AGREEMENT**

21.    <u>Limited Scope of Agreement</u>.  This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement.  Additionally, this Plea Agreement does not preclude

7

the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

22.    <u>Agreement Limited to Southern District of Iowa and the Central District of California</u>.  This Plea Agreement is limited to the United States Attorney's Offices for the Southern District of Iowa and the Central District of California, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## G.    WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

23.    <u>Trial Rights Explained</u>.  Defendant understands that this guilty plea waives the right to:

(a)    Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

(b)    A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

(c)    The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

(d)    Confront and cross-examine adverse witnesses;

(e)    Present evidence and to have witnesses testify on behalf of Defendant, including having the court issue subpoenas to compel witnesses to testify on Defendant's behalf;

(f)    Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

(g)    If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

24.     <u>Waiver of Appeal and Post-Conviction Review</u>.     Defendant knowingly and expressly waives any and all rights to appeal Defendant's convictions in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge(s) or to the court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the district court, to the extent that an appeal is authorized by law.     Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's convictions in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255.     These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H.     VOLUNTARINESS OF PLEAS AND OPPORTUNITY TO CONSULT WITH COUNSEL

25.     <u>Voluntariness of Pleas</u>.     Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

(a)     Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of these pleas, including the maximum penalties provided by law.

(b)     No one has made any promises or offered any rewards in return for these guilty pleas, other than those contained in this written agreement.

(c)     No one has threatened Defendant or Defendant's family to induce these guilty pleas.

(d)     Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

9

26.   <u>Consultation with Attorney</u>.   Defendant has discussed this case and this plea agreement with Defendant's attorney and states that the following is true:

      (a)   Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

      (b)   Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

      (c)   Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision.   Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the pleas.

## I.   GENERAL PROVISIONS

27.   <u>Entire Agreement</u>.   This Plea Agreement, and any attachments, is the entire agreement between the parties.   Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

28.   <u>Public Interest</u>.   The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

29.   <u>Execution/Effective Date</u>.   This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

## J.    SIGNATURES

30.    Defendant.   I have read all of this Plea Agreement and have discussed it with my attorney.   I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No promises have been made to me other than the promises in this Plea Agreement. I have not been threatened in any way to get me to enter into this Plea Agreement. I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case. I am entering into this Plea Agreement and will enter my pleas of guilty under this Agreement because I committed the crimes to which I am pleading guilty. I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

8/17/17
Date

PAUL MICHAEL BOLGER
MATTHEW

31.    Defendant's Attorney.   I have read this Plea Agreement and have discussed it in its entirety with my client.   There is no Plea Agreement other than the agreement set forth in this writing. My client fully understands this Plea Agreement. I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of Defendant's legal rights, and without any coercion or compulsion. I have had full access to the Government's discovery materials, and I believe there is a factual basis for the pleas. I concur with my client entering into this Plea Agreement and in entering pleas of guilty pursuant to the Plea Agreement.

8/17/17
Date

Jeffrey B. Lang
220 N. Main Street, Suite 600
Davenport, IA 52801

11

8/17/17

Andrea D. Mason
220 N. Main St. Ste 600
Davenport, IA 52801

Tel: 563-333-6647
Fax: 563-324-1616
Email: JLang@L-WLAW.com

32.    <u>United States</u>.    The Government agrees to the terms of this Plea Agreement.

Kevin E. VanderSchel
United States Attorney

8/21/17

Date

By:    _Melisa K. Zaehringer (signature)_

Melisa K. Zaehringer
Assistant U.S. Attorney
131 E. 4th Street
Davenport, Iowa 52801
Telephone:  563-449-5432
Telefax:  563-449-5433
E-mail:  melisa.zaehringer@usdoj.gov

Sandra R. Brown
Acting United States Attorney

August 17, 2017

Date

By:    _Mark Aveis (signature)_

Mark Aveis
Assistant U.S. Attorney
312 N. Spring St., 11th Floor
Los Angeles, CA 90012
Telephone:  213-894-4477
Telefax:  213-894-6269
E-mail:  mark.aveis@usdoj.gov

12

Attachment "A"

STIPULATION OF FACTS

1.   Tricare was a health care insurance program of the United States Department of
Defense.   Tricare provided civilian health benefits for military personnel, military retirees, and
military dependents worldwide.   The Tricare program provided medical coverage for Uniformed
Service members including those who were active duty and reservists that were a part of the
following:  U.S. Army, U.S. Air Force, U.S. Navy, U.S. Marine Corps, U.S. Coast Guard, Army
Reserve, Navy Reserve, Marine Corps Reserve, Air National Guard, Air Force Reserve, and U.S.
Coast Guard Reserve and their families.   This program also covered survivors, former spouses,
Medal of Honor recipients and their families, and others registered in the Defense Enrollment
Eligibility Reporting System (DEERS).

2.   There were two types of beneficiaries under the Tricare program:   (a) Sponsors –
active duty, retired and Guard/Reserve members, and (b) Family Members – spouses and
children who were registered in DEERS.

3.   In order to pay a claim, Tricare required that the item or service being billed must be
medically necessary, validly prescribed by a licensed physician, and actually provided to a
Tricare beneficiary.

4.   Tricare was a health care benefit program as defined by Title 18, United States Code,
Section 24(b), and a "Federal health care program," as defined in Title 42, United States Code,
Section 1320a-7b.

5.   Tricare contracted with Express Scripts, Incorporated (ESI) to administer the
prescription drug plan of the Tricare program, including the processing and payment of claims.

13

6.  Pharmacy compounding was a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient.

7.  Tricare had strict regulations regarding the use of telemedicine as a method of treating Tricare patients.    Tricare did not consider telemedicine a substitute for face-to-face health care except in certain limited situations.    One proper use of a telemedicine episode was when the patient could not meet a medical professional face to face because they were in a remote location.    Another proper use of a telemedicine episode was a situation in which there was a need for continuity of care with a specific medical professional.    A proper telemedicine episode of care must utilize some form of video technology in which the patient and the medical professional could see each other and interact with each other.

8.  Under Iowa Code Section 657 - 8.20(155A), "Valid Prescriber/patient relationship – Prescription drug orders and medication orders shall be valid as long as a prescriber/patient relationship exists."  Under Iowa Code Section 657 - 8.19(1) "Requirements for a prescription - A valid prescription drug order shall be based on a valid patient-prescriber relationship. . ." Additionally, under Iowa Code Section 155A.27 "Requirements for Prescription – To be valid, each prescription drug order issued or dispensed in this state must be based on a valid patient-practitioner relationship. . ."

9.  During February through May 2015, Defendant was a medical doctor licensed in Delaware, Florida, Georgia, Illinois, Iowa, Kentucky, New Mexico, and Ohio.

10.  Defendant knowingly entered into an agreement or understanding with Marketer A. Marketer A would send patient intake forms and prescription forms to Defendant.  Defendant

14

would immediately sign the prescription forms without having talked to most of the patients. As of March 25, 2015, Defendant was aware that neither the patients nor the intake forms were being screened by a medical professional prior to being sent to Defendant. Defendant continued to sign the prescription forms which were then filled by the pharmacy. Marketer A paid Defendant approximately $50 per signed prescription form during the relevant time period, resulting in a total payment of $10,950.00.

11.   When Defendant signed these prescription forms, he knowingly and willfully attested that "I have reviewed my patient's medical record(s) and determine that the items I have ordered are medically necessary. I agree to comply with state and federal documentation requirements by retaining a copy of this prescription in the patient's medical records." In fact, defendant had not established a patient-doctor relationship with the patients and had not made an independent, professional assessment that the items ordered were medically necessary.

12.   The prescriptions signed by defendant were then filled by DCRX a.k.a. Patient Care America Pharmacy ("DCRX"), located in Florida, and Haoeyou Pharmacy (or its designee), located in the Central District of California mailed to the patients.

13.   The pharmacies then billed and Tricare paid for these fraudulent prescriptions for compounded medications. Defendant signed a total of 1375 prescriptions for compounded medications during this time period. Based on the 284 patients and 763 prescriptions that Defendant signed and that were filled by DCRX, Tricare paid out approximately $2,920,353.71. Based on the 32 patients and 112 similar prescriptions that were filled by Haoeyou (or its designee), Tricare paid out approximately $566,836.

14.   Defendant signed prescriptions for patients in 16 states in which he was not licensed to practice medicine, including Alabama. In total, 105 patients received medication authorized

15

by Defendant who was not licensed in those states.   This cost Tricare approximately $681,000.00.

15.   The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information.  FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

16.   FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), Title 21, United States Code, Section 301, et seq.  Under the FDCA, the term "drug" included articles that were (1) recognized in the official United States Pharmacopeia or official National Formulary or any supplement to any of them; (2) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (3) intended to affect the structure or any function of the body of man.   21 U.S.C. § 321(g)(1)(A), (B), and (C).

17.   Some of the drugs regulated under the FDCA were "prescription drugs." "Prescription drugs" were those drugs, that, because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary to their use, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or that were required to be administered under the professional supervision of a practitioner licensed by law to administer such drugs as a condition of FDA approving any such drug to be placed on the market.   21 U.S.C. § 353(b)(l)(A) and (B).

16

18.    The FDCA prohibited the introduction or delivery for introduction into interstate commerce, or the causing of such introduction or delivery, of any drug that was misbranded.    21 U.S.C. § 331(a).

19.    The act of dispensing prescription drugs without a valid prescription of a practitioner licensed by law to administer such drug was an act which causes the drug to become misbranded while held for sale.    21 U.S.C. § 353(b)(1).

20.    A drug prescription is invalid under the FDCA unless it is issued in the usual course of professional practice and for a legitimate medical purpose.    A valid prescription requires a bona fide physician-patient relationship.    Factors that establish the existence of a bona fide physician-patient relationship, and thus a valid prescription, include whether the physician considered the actual needs of the patient, the quantity of the drug prescribed, the type of drug prescribed and for what purpose, the extent to which the physician supervised the issuance of the drug, and whether the physician adhered to prevailing medical standards when issuing the prescription and acted in accordance with generally accepted practices.

21.    A "valid prescription" means a written order, that is, directions for the preparation and administration of a medicine, remedy, or drug for a real patient who needs it after an examination or consultation by a licensed practitioner who has a physician-patient relationship with the patient, and that is issued for a legitimate medical purpose in the usual course of professional practice by a licensed medical practitioner.    Whether a prescription has been issued in the usual course of a professional practice for a legitimate medical purpose is determined in part by reference to the laws and regulations of the state in which the physician is licensed to practice medicine and issue prescriptions.

17

22. Defendant failed to conform to the minimum standard of acceptable and prevailing practice of medicine. Defendant did not obtain a medical history, nor perform a medical interview or physical exam sufficient to establish informed medical diagnosis and provide medical care.

23. Flurbiprofen and Gabapentin are "drugs" within the meaning of Title 21, United States Code, Section 321(g)(1) and are "prescription drugs" as defined in Title 21, United States Code, Section 353(b)(1), and could lawfully be dispensed only upon the prescription of a practitioner licensed by law to administer such drugs. The compound medication that was authorized by Defendant, did not contain controlled substances.

24. Defendant specifically admits as to each of the allegations in Counts 1-18 in the Iowa Information and to the single count of the California Information:

a. On each date referenced in these allegations, Defendant knowingly and willfully made false statements by signing multiple prescription forms authorizing the dispensing of prescription drugs including Flurbiprofen and Gabapentin, indicating that the prescriptions were medically necessary. Defendant signed and attested the validity of each prescription based only on an intake form recorded by non-medical staff and the accompanying prescription form, which included pre-checked metabolic supplements for each patient. Defendant signed each the prescription form without having talked to the patient, conducting a physical examination, or reviewing medical records. The prescription form was then faxed to the pharmacy (DCRX or Haoeyou). This signed prescription form was then used by the pharmacy to fill the requested medication. Tricare then paid the pharmacy for the medication that was sent to the patient. Even after Defendant explicitly knew that no medical professionals were involved in the intake process, he continued to sign prescriptions, and not talk to the patients.

18

b.    Defendant admits and agrees that the false statements in each of these prescriptions were material.

c.    Defendant failed to conform to the minimum standards of acceptable and prevailing practice of medicine. Defendant did not obtain the medical histories, nor perform a medical interview or physical examination sufficient to establish a doctor-patient relationship and make an informed diagnosis and provide proper medical care.

d.    For each of the eighty (80) patients listed below, Defendant wrote prescriptions after March 25, 2015, when he had discussions with an agent of Marketer A, discussing that the intake forms submitted by *Marketer A* to Defendant were not reviewed by any medical professionals, but generated primarily from a call center that was located outside the United States. Defendant did not establish a doctor-patient relationship with any of the patients listed below before he authorized the prescriptions.

| Date RX | | | |
|---|---|---|---|
| 3/26/2015 | SA | OH | $11,662.20 |
| 3/26/2015 | AE | FL | $42,850.62 |
| 3/26/2015 | RF | OH | $31,172.38 |
| 3/26/2015 | DJ | FL | $33,235.16 |
| 3/26/2015 | ZJ | GA | $9,815.33 |
| 3/26/2015 | SL | GA | $9,815.33 |
| 3/26/2015 | SM | FL | $23,025.08 |
| 3/28/2015 | IG | KY | $12,647.42 |
| 3/28/2015 | MK | OH | $7,701.10 |
| 3/28/2015 | ML | NM | $30,270.64 |
| 3/28/2015 | WL | OH | $27,105.91 |
| 3/28/2015 | PL | NM | $13,672.68 |
| 3/28/2015 | RH | GA | $1,827.78 |
| 3/30/2015 | FBB | FL | $11,263.07 |
| 3/30/2015 | FB | GA | $18,939.94 |
| 3/30/2015 | HF | FL | $24,664.57 |
| 3/30/2015 | WH | FL | $7,701.10 |
| 3/30/2015 | RO | FL | $7,701.10 |
| 3/30/2015 | DV | GA | $21,577.60 |
| 3/31/2015 | JB | FL | $17,935.63 |

| | | | |
|---|---|---|---|
| 3/31/2015 | MB | FL | $32,367.71 |
| 3/31/2015 | JB | FL | $7,701.10 |
| 3/31/2015 | MC | GA | $7,701.10 |
| 3/31/2015 | JC | FL | $14,669.12 |
| 3/31/2015 | SC | FL | $17,935.63 |
| 3/31/2015 | CD | FL | $7,701.10 |
| 3/31/2015 | EE | FL | $7,741.10 |
| 3/31/2015 | HF | FL | $9,794.88 |
| 3/31/2015 | JJ | FL | $7,701.10 |
| 3/31/2015 | RP | FL | $63,205.69 |
| 3/31/2015 | EW | FL | $13,701.02 |
| 4/1/2015 | CD | KY | $20,767.72 |
| 4/1/2015 | AH | GA | $20,222.66 |
| 4/1/2015 | EP | KY | $23,000.88 |
| 4/1/2015 | JR | GA | $7,576.35 |
| 4/1/2015 | JT | FL | $36,011.90 |
| 4/2/2015 | HD | KY | $6,962.79 |
| 4/2/2015 | JH | FL | $12,836.46 |
| 4/3/2015 | TH | FL | $22,970.63 |
| 4/3/2015 | CM | GA | $17,935.63 |
| 4/3/2015 | ER | FL | $20,767.97 |
| 4/3/2015 | JS | FL | $34,640.37 |
| 4/3/2015 | LW | GA | $7,650.30 |
| 4/3/2015 | EW | FL | $21,381.28 |
| 4/6/2015 | RD | FL | $23,150.64 |
| 4/6/2015 | SG | GA | $27,209.23 |
| 4/6/2015 | GJ | GA | $22,262.32 |
| 4/6/2015 | WR | FL | $5,903.32 |
| 4/6/2015 | LR | OH | $7,701.10 |
| 4/6/2015 | IS | GA | $20,974.32 |
| 4/6/2015 | RS | FL | $7,701.10 |
| 4/6/2015 | MT | KY | $10,533.19 |
| 4/7/2015 | AB | FL | $7,741.10 |
| 4/7/2015 | MG | GA | $21,497.60 |
| 4/7/2015 | SL | FL | $7,701.10 |
| 4/7/2015 | JR | FL | $20,767.72 |
| 4/7/2015 | MW | GA | $13,701.02 |
| 4/8/2015 | JK | OH | $4,090.96 |
| 4/8/2015 | DM | GA | $17,127.31 |
| 4/9/2015 | BB | FL | $10,533.19 |
| 4/9/2015 | LH | FL | $22,080.40 |
| 4/9/2015 | CP | NM | $12,792.99 |
| 4/9/2015 | ET | NM | $21,497.60 |
| 4/10/2015 | GC | KY | $23,000.63 |

20

| 4/13/2015 | HH | IL | $10,533.19 |
| 4/15/2015 | HL | NM | $6,962.79 |
| 4/16/2015 | JC | FL | $32,496.85 |
| 4/16/2015 | TD | KY | $20,029.41 |
| 4/16/2015 | VH | FL | $613.56 |
| 4/16/2015 | JV | GA | $17,197.32 |
| 4/17/2015 | MS | FL | $23,060.63 |
| 4/19/2015 | JE | GA | $7,701.10 |
| 4/19/2015 | RL | FL | $6,962.79 |
| 4/19/2015 | RL | GA | $19,292.53 |
| 4/19/2015 | MM | FL | $28,286.69 |
| 4/19/2015 | SM | GA | $28,788.75 |
| 4/19/2015 | BW | GA | $1,827.78 |
| 4/19/2015 | RW | FL | $9,794.88 |
| 4/20/2015 | GB | OH | $33,853.75 |
| 4/20/2015 | WB | FL | $25,838.15 |

e.    For another approximately 32 patients, Defendant wrote prescriptions, for which

Haoeyou (or its designee pharmacy), each located in the Central District of California, received

at total of approximately $139,063 and $427,773, respectively, from Tricare as reimbursement

for filling Bolger-prescribed compounded medications, knowing that he did not establish a

doctor-patient relationship with any of the patients before he authorized each prescription.

25.    Each of these approximately 112 prescriptions described in paragraph 24 was in

connection with the delivery of a health care benefit, item, or service.

26.    Defendant specifically admits as to counts 19-23 that he misbranded at least five

prescriptions for patients residing in Alabama, a state in which Defendant was not licensed.

Throughout March and April of 2015, Defendant caused a claim for health care benefits to be

presented to Tricare for a total of eleven (11) Alabama patients, costing Tricare $268,000.00, due

to these misbranded prescriptions.    Defendant admits that there are 16 states he was not licensed

in that he wrote unauthorized prescriptions.    These prescriptions were introduced and delivered

in interstate commerce, following the misbranding of such prescriptions.    In total, approximately

105 patients outside his licensed states, received prescriptions authorized by Defendant, costing Tricare approximately $681,000.00.    Defendant knows that he failed to establish a patient-prescriber relationship with any of the patients he wrote prescriptions for from March 5, 2015 until April 20, 2015.

| RE | signed 3/5/15 | Flurbiprofen | RX# 111335, 111337 |
| PS | signed 3/5/15 | | RX# 111375, 111376, 111379, 111380 |
| AT | signed 3/5/15 | | RX# 111373, 111377, 111378 |
| KJ | signed 3/6/15 | | RX# 111425, 111427 |
| RE | signed 3/7/15 | | RX# 111282, 111283 |

27.    Defendant agrees that one or more of the acts constituting the offenses charged in Counts 1 through 23 of the Iowa Information occurred in the Southern District of Iowa.

28. Defendant hereby certifies that the facts set forth above are true and accurate to the

best of Defendant's knowledge.

_8/17/17_
Date

_8/17/17_
Date

PAUL MICHAEL BOLGER
MATTHEW

Jeffrey B. Lang, Bolger's Attorney    _8/17/17_
220 N. Main Street, Suite 600
Davenport, IA 52801
Tel: 563-333-6647
Fax: 563-324-1616
Email: JLang@L-WLAW.com    Andrea D. Major
220 N. Main St.
Ste. 60
Davenport, IA 52801
AMASON@L-WLAW

Kevin E. VanderSchel
United States Attorney

_8/21/17_
Date

By: _Melisa K. Zaehringer_
Melisa K. Zaehringer
Assistant U.S. Attorney
131 E. 4th Street
Davenport, Iowa 52801
Telephone: 563-449-5432
Telefax: 563-449-5433
E-mail: melisa.zaehringer@usdoj.gov

Sandra R. Brown
Acting United States Attorney

_August 17, 2017_
Date

By: _Mark Aveis_
Mark Aveis
Assistant U.S. Attorney
312 N. Spring St., 11th Floor
Los Angeles, CA 90012
Telephone: 213-894-4477
Telefax: 213-894-6269
E-mail: mark.aveis@usdoj.gov

23